(No. 3910—)

PEARLE M. HOFF, Claimant, *vs.* STATE OF ILLINOIS, Respondent.
*Opinion filed January 9, 1946.*

CLAIMANT, pro se.

GEORGE F. BARRETT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

FISHER, C. J.

Claimant alleges that she is the widow of Arthur

H. Hoff, who, at the time of his death on March 28, 1945 was employed by respondent in the capacity of a maintenance helper by the Division of Highways. That, on March 28, 1945, the said Arthur H. Hoff, while engaged in his regular duties, received an electrical shock from which he died.

Claimant seeks an award under the Workmen's Compensation Act for the death of her husband, the said Arthur H. Hoff.

The record consists of the Complaint filed pro se, a copy of Marriage Certificate, Departmental Report, Stipulation, and Waiver of Brief and Argument by both claimant and respondent. It is stipulated that the Departmental Report shall constitute the record in this case.

It appears that the deceased left his wife, the claimant herein, entirely dependent upon him for support, and at the time of his death had no children under the age of 16 years dependent upon him.

From the Departmental Report, it appears that Arthur H. Hoff was employed by the State of Illinois and, during the year immediately prior to his death his earnings amounted to $1,553.95, or an average of $29.88 per week.

The Department Report further shows:

"On March 28, 1945, at 1:50 P. M., Arthur H. Hoff, John Piraino, Ralph W. Dowdle, Clarence C. Kellogg, and William Boyd, employees of the Division of Highways, were performing various elements of work in and about a Division subway pump house, on State Bond Issue Route 121, where that route passes under the tracks of the Illinois Terminal Railway Company northeast of the city of Decatur. Electric wires, which carry current to the motors in the pump house, are about 14 feet above the north edge of the pump house. At the time of accident, Messrs. Hoff and Piraino were on top of the pump house, Kellogg was at the entrance to the pump house, Dowdle was inside the pump house, and Boyd at the bottom of the pump pit. Kellogg passed a 14-foot section of one-half inch pipe to Hoff and Piraino on top of pump house. This pipe was one of two sections to be installed as a grease

line to serve bearings on a vertical pump drive shaft. A box scaffold had been erected on top of the pump house in connection with the removal of an electric motor and other heavy parts of the pump system. The roof of the pump house is sheet metal and equipped with an opening to permit access into the pump house from above. Mr. Hoff was raising the line of pipe upward and to the north through the scaffold preparatory to passing it down into the pump house. A strong wind was blowing from the south and it is believed that that element contributed to bringing the pipe into contact with the electric transmission wire (4000 volts). In any event, the contact was made and Mr. Hoff rendered unconscious. He fell into an angle of the scaffold. Artificial respiration was administered immediately by fellow employees and continued until the arrival of an ambulance, approximately 15 minutes later. Mr. Hoff was pronounced dead upon the arrival of the ambulance. The Division of Highways had immediate notice of the accident and will not be called upon to pay for any ambulance, medical, or hospital services."

There appears to be no question that the deceased met his death during the course of and within the scope of his employment by respondent and that his widow, the claimant herein, is entitled to the benefits of the Workmen's Compensation Act.

Claimant is entitled to an award under the Workmen's Compensation Act, Section 7 (a) and (1) in the sum of $4,700.00, payable $17.55 per week.

An award is therefore entered in favor of claimant, Pearle M. Hoff, in the sum of $4,700.00, payable as follows:

$ 719.55, which has accrued up to January 9, 1946 and is payable forthwith;

3,980.45, payable at the rate of $17.55 per week, beginning with the week of January 16, 1946.

This award is subject to the approval of the Governor as provided in Section 3 of "an Act concerning the payment of compensation awards to State employees."